# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00658-CV

---

**A. S., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 421ST DISTRICT COURT OF CALDWELL COUNTY**
**NO. 21-FL-237, THE HONORABLE CHRIS SCHNEIDER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A.S. (Father) appeals the trial court's order of termination, which terminated his parental rights to Y.R. (Child).[1]  In four appellate issues, Father maintains that the findings made against him under statutory predicate grounds for termination Paragraphs (E), (N), and (O) and under the best-interest ground were not supported by legally and factually sufficient evidence. We reject Father's arguments, concluding that the evidence was sufficient under Paragraph (E) and best interest, and affirm the order of termination.

## BACKGROUND

The Department's involvement with Child here began in 2021 when Child was one year old and Child's mother was alleged to be abusing drugs and prostituting.  Father was not

---

[1]  The same order also terminated Child's mother's parental rights, but the mother does not challenge the order in this appeal.

then involved in Child's life—he did not even know about Child's existence, according to his testimony—and the suit continued for some time before Father became involved.

Back in 2018, Father finished a state prison sentence of about four years for the enhanced offense of unlawful possession of a firearm, and he moved to Amarillo, where he took up using and dealing methamphetamine and cultivated a relationship with Child's mother. The next year, Father was again incarcerated—on a new, federal charge of felon in possession of a firearm. He served about 36 months in prison, after which he had to serve a term of probation.

Child was born in 2020 while Father was still incarcerated for the federal felon-in-possession charge. The Department took temporary managing conservatorship of Child in 2021 and placed her in foster care.[2] Child's mother named Father as potentially being Child's father to the Department. In 2022, the Department first pleaded for termination of Father's parental rights, and Father answered the suit. Later that year, in quick succession, Father was released on probation from his federal incarceration, paternity-test results confirmed his parentage of Child, and the trial date in the parental-rights-termination suit approached. Because the trial so quickly followed the confirmation of Father's parentage, the parties agreed that the Department would take permanent managing conservatorship of Child and Father would be given a Family Service Plan and the chance to complete the Plan to obtain conservatorship of Child. Father's Plan was made an order of the court, but he ended up not fulfilling all that his Plan required.

During his probation for the federal felon-in-possession charge and during this suit, Father resumed his methamphetamine habit, later admitting as much to his probation officer. This

---

[2] The Department later tried placing Child with some of her mother's relatives, but the relatives quickly expressed an inability to deal with Child's behavioral issues. The Department placed Child back with the foster family, where Child remained through trial.

resulted in the government's seeking to revoke his probation and charging him in a superseding indictment with possession with intent to distribute and his reincarceration pending the new charge. All the while, Father's sister reached out to Department personnel to offer to be a placement for Child. Yet when Department personnel sought to have her home cleared as a potential placement, the sister dropped out of contact with the Department for months. Not until around summer 2023 was the sister's home study fully approved.

In August 2023, the parties tried the Department's request that Father's parental rights be terminated before an associate judge. Father's federal charge for possession with intent to distribute was still pending, so he was incarcerated during the trial. He testified that he would plead guilty to simple possession, which would likely result in his incarceration for another three or so years. The associate judge rendered judgment terminating Father's rights, and Father requested a *de novo* hearing before the district court. Child was almost four years old at the time of the trial before the district court. At that trial, the court admitted into evidence the transcript and exhibits from the trial before the associate judge and took further testimony from Father and a Department caseworker. Afterward, the district court signed its order of termination of Father's parental rights, which Father now appeals.

## DISCUSSION

Father challenges the legal and factual sufficiency of the evidence supporting the two elements of termination of parental rights—the statutory predicate ground and the best-interest ground. To terminate parental rights, the Department must prove both one of the statutory predicate grounds and that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The Department must prove

3

both elements by clear and convincing evidence. *See* Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

Legal-sufficiency review of the evidence to support termination requires reviewing all the evidence in the light most favorable to the finding under attack and considering undisputed contrary evidence to decide whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.* When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

## I.      The evidence was sufficient to support the finding against Father under statutory predicate ground Paragraph (E).

In his first appellate issue, Father maintains that the evidence was legally and factually insufficient to support the finding against him under statutory predicate ground Paragraph (E). Paragraph (E) applies when a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional

4

well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). For these purposes, "'[e]ndanger' means 'to expose to loss or injury; to jeopardize.'" *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Although '"endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury,'" *id.* (quoting *Boyd*, 727 S.W.2d at 533), or even that the conduct happen in the child's presence, *Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *4 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.). "Endangerment does not have to be established as an independent proposition, but can be inferred from parental misconduct alone," and courts may look to conduct "before the child's birth and both before and after the child has been removed by the Department." *Id.* "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being," and "[t]hose risks can be developed by circumstances arising from and surrounding a parent's behavior." *In re R.R.A.*, __ S.W.3d __, 2024 WL 1221674, at *6 (Tex. Mar. 22, 2024). "Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *Pruitt*, 2010 WL 5463861, at *4.

Important under Paragraph (E) is whether the endangerment of the child's well-being was the direct result of a person's conduct, including acts, omissions, or failures to act. *See T.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00174-CV, 2021 WL 4692471, at *6 (Tex. App.—Austin Oct. 8, 2021, pet. denied) (mem. op.); *In re J.F.-G.*, 612 S.W.3d 373, 382 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). "Termination under subsection (E) requires more than a single act or omission, and the Department must show a

5

voluntary, deliberate, and conscious course of conduct by the parent, considering a parent's actions both before and after the child was removed from the home." *T.M.*, 2021 WL 4692471, at *6.

The evidence here showed three sets of circumstances supporting a Paragraph (E) finding. First was evidence of illegal-drug use by Father. "[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as" endangering conduct. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Drug use "exposes the child to the possibility that the parent may be impaired or imprisoned." *J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00274-CV, 2021 WL 5225432, at *5 (Tex. App.—Austin Nov. 10, 2021, pet. denied) (mem. op.) (quoting *M.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00531-CV, 2021 WL 1704258, at *8 (Tex. App.—Austin Apr. 30, 2021, no pet.) (mem. op.)). "[A] pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm," and factfinders can reasonably credit as evidence of endangerment evidence "that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *R.R.A.*, 2024 WL 1221674, at *7 (quoting *J.O.A.*, 283 S.W.3d at 345).

Evidence that the parent used illegal drugs while a suit to terminate the parent's rights is pending is especially supportive of termination under Paragraph (E). *See T.M.*, 2021 WL 4692471, at *6. Plus, the factfinder may infer from a parent's missing Department-requested illegal-drug tests during a termination suit that the tests missed would have come up positive. *See J.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00187-CV, 2022 WL 7163637, at *12 (Tex. App.—Austin Oct. 13, 2022, no pet.) (mem. op.); *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Father admitted to his probation officer that he used methamphetamine for help coping with stress, and Father used methamphetamine while this suit was pending. He admitted

during the trial before the district court that his use of methamphetamine to cope suggests that he is addicted to the drug. And he admitted during the trial before the associate judge that he used methamphetamine while he was still on federal probation. This methamphetamine use resulted in the new federal charge for possession with intent to distribute, and Father agreed to plead guilty to simple possession. His punishment had not yet been decided by the federal court by the time this suit went to trial before the state district court, but he estimated that the punishment would be about three years in prison. He also admitted how long-term his methamphetamine use has been— it dated back to at least 2014. He admitted to arrests for possession of still other controlled substances, occurring in 2001 and 2002. Exhibits admitted into evidence show that after the 2002 arrest, Father pleaded guilty to two counts of possession of a controlled substance. He also missed most of the drug tests that his court-ordered Plan required of him.

Second, another way that parents can endanger their children by conduct is by subjecting the children to uncertainty and instability. *See S.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00695-CV, 2022 WL 2542007, at \*11 (Tex. App.—Austin July 8, 2022, pet. denied) (mem. op.). They can do so by repeatedly engaging in conduct that gets them incarcerated:

> [I]ncarceration does support an endangerment finding "if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child." A parent's criminal history— taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment. Imprisonment thus "is certainly a factor" the trial court may weigh when considering endangerment.

*In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021).

Father's criminal history includes: the 2002 guilty pleas, leading to concurrent five-year prison sentences; a 2010 prison sentence of 18 months for evading arrest with a vehicle;

7

a 2014 sentence of five years in prison for enhanced unlawful possession of a firearm; the 2020 federal sentence of 41 months for the offense of felon in possession of a firearm; and the 2023 federal revocation of probation for the admitted methamphetamine use and the ensuing superseding indictment for possession with intent to distribute, under which Father pleaded guilty to simple possession. He has been incarcerated ever since it was confirmed to him that he is Child's father.

Finally, a parent's failure to participate in a Department-requested Family Service Plan can be considered in endangerment analysis. *See E.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00104-CV, 2023 WL 4139041, at *5 (Tex. App.—Austin June 23, 2023, pet. denied) (mem. op.); *In re J.A.V.*, 632 S.W.3d 121, 132 (Tex. App.—El Paso 2021, no pet.). A related failure to participate in Department-offered visits with the child can constitute emotionally endangering conduct for the child. *See In re A.F.*, No. 07-19-00435-CV, 2020 WL 2786940, at *7 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.); *In re S.I.H.*, No. 02-11-00489-CV, 2012 WL 858643, at *6 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.).

Father admitted the Department's good-faith efforts to work with him in this suit and that while he was released from incarceration during this suit, the Department "wanted [him] to work services to try to see if [he] could get [Child] back." But Father undisputedly did not complete the tasks required in his Plan and ordered by the court. While he did attend the psychosocial evaluation and started therapy, he was unsuccessfully discharged for three consecutive no-shows. He also failed to take some required classes (though he took some others) and missed most of the required drug tests. Before he was reincarcerated while this suit was pending, he had chances to visit Child in person at a Department office, but he attended only one such visit while missing about six others. He similarly attended some video calls with Child but

missed many others. These missed chances helped lead Department personnel to conclude that Father had established no relationship with Child.

Faced with all this evidence, Father's argument on appeal is unavailing. He argues in support of his evidentiary-sufficiency challenge that because he "had never been the caregiver of [Child] or knew he was the father of [Child] until September 2022," "[h]e could not and did not endanger her." This argument fails to consider the long-time feature of the law of endangerment that "it is not necessary that the conduct be directed at the child or that the child actually suffers injury," *see M.C.*, 917 S.W.2d at 269 (quoting *Boyd*, 727 S.W.2d at 533); *see also R.R.A.*, 2024 WL 1221674, at *6 ("[E]ndangerment does not require a parent's drug use to directly harm the child."), or the feature that the parent's endangering conduct need not happen in the child's presence, *see Pruitt*, 2010 WL 5463861, at *4. Father's illegal-drug use and repeated conduct leading to incarceration still exposed Child to jeopardy and loss even if Father did not do those things while around Child. And as the Department points out, knowledge of paternity is not a prerequisite to a showing of Paragraph (E) endangerment. *In re N.N.M.*, No. 04-19-00369-CV, 2020 WL 4808704, at *5 (Tex. App.—San Antonio Aug. 19, 2020, no pet.) (mem. op.); *In re J.H.G.*, No. 01-16-01006-CV, 2017 WL 2378141, at *6 (Tex. App.—Houston [1st Dist.] June 1, 2017, pet. denied) (mem. op.). Therefore, a father's conduct before the establishment of his paternity can be considered as evidence of an endangering course of conduct under Paragraph (E). *See In re M.R.*, No. 02-22-00118-CV, 2022 WL 4545534, at *6 (Tex. App.—Fort Worth Sept. 29, 2022, no pet.) (mem. op.); *N.N.M.*, 2020 WL 4808704, at *5.

In all then, under the applicable legal- and factual-sufficiency standards, we conclude that the evidence was sufficient to support termination under Paragraph (E) and overrule Father's first appellate issue. Because proof of only one statutory predicate ground is needed to

support termination, we need not reach Father's second and third issues, which attack the findings made against him under statutory predicate grounds Paragraphs (N) and (O). *See* Tex. R. App. P. 47.1; *In re N.G.*, 577 S.W.3d 230, 232–35 (Tex. 2019) (per curiam).

## II.    The evidence was sufficient to support the best-interest finding against Father.

In his remaining appellate issue, Father maintains that the evidence was legally and factually insufficient to support the best-interest finding made against him. When reviewing best-interest findings, factors that courts consider include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the parent's conduct that may indicate that the existing parent–child relationship is improper, and (9) any excuses for the parent's conduct. *In re J.W.*, 645 S.W.3d 726, 746 (Tex. 2022) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). This list is not exhaustive, not all factors need be proven to determine best interest, and proof of only one factor may in a particular factual context support termination. *See M.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at \*5 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.); *S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at \*16 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.). Evidence probative under the statutory predicate grounds may also be probative of best interest. *A.C.*, 560 S.W.3d at 631–32.

While parental rights are of constitutional magnitude, they are not absolute. *C.H.*, 89 S.W.3d at 26; *A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00054-CV, 2023 WL

10

4424848, at \*2 (Tex. App.—Austin July 11, 2023, no pet.) (mem. op.). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *C.H.*, 89 S.W.3d at 26; *A.B.*, 2023 WL 4424848, at \*2. The strong presumption supporting keeping children with their biological parents can be overcome by contrary evidence. *A.B.*, 2023 WL 4424848, at \*2; *Aguilar v. Foy*, No. 03-10-00678-CV, 2012 WL 677497, at \*8 (Tex. App.—Austin Mar. 1, 2012, no pet.) (mem. op.).

The evidence recounted above about the Paragraph (E) finding is relevant to best interest as well. That evidence shows an inability by Father to stop using illegal drugs. It shows that he has spent and will continue to spend much of his time incarcerated. And it shows that he did not take many of the steps that could have helped him form a bond with Child. By contrast, other evidence showed that Child is very bonded with her foster family, considers the foster parents to be her mom and dad, and is thriving and having all her needs met in their home. Father admits Child's bond with them. The foster mother, who testified, shared that she and her husband had been married for 10 years and had an adopted child. The foster mother usually stays at home and watches both Child and their adopted child. The foster family has Child in speech and behavioral therapy and has provided her with monthly contact with her maternal grandparents and visits with Father's sister. The foster mother is willing to set up email contact with Father and Child's mother so that they can send future messages to Child. Child is healthy and on target developmentally in the foster family's care, and the foster parents want to adopt her. We thus see in the record evidence supporting termination under *Holley* factors two, three, four, six, seven, and eight.

Most of Father's arguments on appeal concern his preference that Child be placed with his sister instead of with the foster family, thus invoking the plans-for-the-child *Holley* factor

11

(and potentially others). He faults the Department for not identifying his sister quickly enough as a potential placement and for not working hard enough to place Child with her. And he explains how he believes that his sister passes muster under many of the *Holley* factors.

Yet the evidence allowed the trial court, as factfinder, to draw reasonable inferences for the foster family as a placement better serving Child's best interest compared with placement with Father's sister. *See S.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00608-CV, 2024 WL 131757, at *7 (Tex. App.—Austin Jan. 12, 2024, no pet.) (mem. op.). After Father's sister had identified herself to Department personnel as a willing placement, she fell out of contact with the Department for several months when Department personnel were seeking to have her home approved as a possible placement. The home study has since been approved. Although she testified at trial that she stopped contacting the Department so that she could discuss with Father what he wanted for Child, the trial court reasonably could have discounted this explanation and instead reasonably inferred that she was not as eager to provide Child a home as were the foster parents. *See A.B.*, 437 S.W.3d at 503 (requiring due deference to factfinders' evaluations of witness credibility and demeanor). Relatedly, though Father's sister participated in some visits with Child, she missed five scheduled visits and in all but one instance did not offer an explanation to Department personnel for why she had missed. The visits that she did attend, including one in person, generally went well. She explained in testimony her experience with the kind of behavioral issues that Child has shown and that she would be protective of Child, even from Father, and treat Child as her own and adopt her. Finally, even if Father's parental rights would be terminated, the Department could still place Child with Father's sister, and termination alone does not prevent Father's sister from being a major part of Child's life.

In all under the applicable legal- and factual-sufficiency standards and through the prism of the *Holley* factors, we conclude that the evidence allowed the trial court to conclude that terminating Father's parental rights was in Child's best interest. When the focus is appropriately placed on Child's best interest, the evidence allowed the trial court to conclude that maintaining Father's parental rights was not in Child's best interest. We overrule Father's final appellate issue.

## CONCLUSION

We affirm the trial court's order of termination.

_____

Chari L. Kelly, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   April 12, 2024